IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHERRIE L. DELONG,

                            Plaintiff,

          v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

                                  OPINION AND ORDER

                                      14-cv-414-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Sherrie L. Delong is seeking judicial review of the administrative law judge's decision, denying plaintiff's application for disability insurance benefits. Plaintiff argues that she is disabled because of her chronic back, neck, shoulder and arm pain and depression. Plaintiff contends that the administrative law judge erred in three respects: (1) he did not give sufficient weight to the opinion of the testifying medical expert, Dr. Anthony Francis; (2) he did not give sufficient weight to the opinion of the treating physician, Dr. Michael Lockheart; and (3) his determination of plaintiff's credibility was erroneous.

As an initial matter, I note that plaintiff's briefs contains numerous undefined acronyms and jargon. If in the future, a party's briefs are as difficult to follow as these, the court may ask the party to rewrite the briefs. Nevertheless, after reviewing the record and the administrative law judge's decision, I conclude that he failed to give a sufficient explanation of his reasons for discounting plaintiff's credibility and the opinions of Dr. Francis and Dr. Lockheart.

In particular, the administrative law judge did not give logical reasons for discounting Dr.

1

Francis's opinion that plaintiff should be restricted to sedentary work and concluded instead that plaintiff's followup appointments showed that her condition was not permanent and that her provider's weightlifting restriction showed she could do "light" work even though the provider did not say how often plaintiff could lift that weight.  Further, the administrative law judge failed to consider Dr. Lockheart's reliance on the combined effects of plaintiff's physical problems and depression and relied on plaintiff's refusal to pursue treatment without considering her ability to pay and the part-time nature of her work after her alleged onset date.  Finally, the administrative law judge erred by relying on plaintiff's unrelated daily activities and work record of poor earnings as reasons for discrediting her.  I also note that although the parties did not raise this issue, the administrative law judge's reliance on the vocational expert's testimony is questionable and should be revisited.  Accordingly, the case must be remanded.


RECORD FACTS

Plaintiff Sherrie L. Delong was 51 years old on July 11, 2011, the date on which she alleges she became disabled.  Before July 2011, plaintiff worked full-time as a assembler of veterinary medicine products; after July, she used leave through the Family and Medical Leave Act to work part-time (four hours a day) in the same position.  AR 35.  Plaintiff was laid off in October 2011 but called back for full-time work in February 2012.  AR 35.  She lasted one month on the job and had seven absences, AR 115, before quitting because of the pain she experienced from working.  AR 39.

From 2009 until 2011, plaintiff was seen by Desiree Phillips, a physician's assistant, for her chronic neck and right arm pain.  During this course of treatment, a June 25, 2010 magnetic

resonance imaging study revealed several degenerative changes in plaintiff's spine, including a protrusion at C6-C7, but the protrusion was opposite the area where she experienced pain. AR 36, 40, 440. A later MRI on December 22, 2011, revealed progression in the degenerative changes in her back. AR 41, 395. Phillips found that plaintiff had osteoarthritis and injury to her neck and shoulder from overuse. AR 271. She encouraged plaintiff to talk with her employer about a job that required fewer repetitive motions, AR 271, and advised plaintiff to seek physical therapy and other pain management. AR 259-60. Plaintiff attended some physical therapy sessions but then determined that her insurance would not cover the therapy. AR 40, 261-62. In 2011, plaintiff began seeing Dr. Michael Lockheart, an occupational medicine specialist.

During the course of her treatment, plaintiff had taken prescription painkillers, including Vicodin, the muscle relaxant Tramadol and nonprescription painkillers for her physical problems. AR 40-41. Plaintiff declined injections for her pain and her providers concluded that her problems did not require surgery. AR 41-42.

In March 2012, plaintiff had a Patient Health Questionnaire (phq-9) score of 19 (moderately severe depression). AR 392. In June 2012, plaintiff had a phq-9 score of 14 (moderate depression) and a Global Assessment of Functioning score of 55 (moderate) when assessed by a behavioral health clinic. AR 42, 511-13. Plaintiff has not taken medicine for her mental health problems, AR 42, but she did attend four therapy sessions for those problems. AR 500-15.

On November 26, 2012, plaintiff was present for a video conference hearing before Administrative Law Judge Phillip Lyman. During the hearing, Dr. Anthony Francis, an

orthopedist, testified as a medical expert after reviewing plaintiff's medical records.  He testified that plaintiff would be "markedly limit[ed]" in upper extremity use, which he said would limit her ability to do work involving a "repetitive shoulder/wrist/hand motion" or sitting at a computer.  AR 108.  He said plaintiff "could probably function I suppose at either a light or a sedentary" but that he was "going to put her down at sedentary. . . ."  AR 43, 108.

Also testifying was Karl Botterbusch, the vocational expert.  He testified that plaintiff could not perform her prior relevant work under the hypothetical circumstances listed by the administrative law judge.  Hypothesizing that plaintiff could perform with less than one absence a month and no unscheduled breaks, Botterbusch testified that plaintiff could work as a photocopy machine operator or as an office helper.

On November 30, 2012, the administrative law judge issued a decision, finding plaintiff had the severe impairments of a rapid heart rate, cervical degenerative disc disease, osteoarthritis, right trapezius strain, golfer's elbow, chronic pain disorder, dysthymia and depression.  AR 35-36.  Nevertheless, he determined that plaintiff's mental and physical impairments did not meet or equal a listed impairment under 20 C.F.R. Part 404.  AR 36-37.  He concluded that plaintiff had the residual functional capacity to perform light work with restrictions on interacting with the public, crawling or kneeling, climbing stairs, ramps and ladders, sitting or standing for more than six hours, reaching with her right arm and frequent handling and fingering, AR 38, and that she would miss less than one day of work a month as a result of her impairments.  AR 44-45.  Relying on the testimony of vocational expert Botterbosch, the administrative law judge found that plaintiff could perform work as a photocopy machine operator, of which there are 66,500 jobs in the national economy and 1,400 jobs in Wisconsin, and office helper, of which there are

4

36,400 jobs in the national economy and 740 jobs in Wisconsin, AR 44-45.

OPINION

Plaintiff argues that the administrative law judge improperly discounted the opinion of Dr. Francis, who believed plaintiff could work only at the sedentary level, and Dr. Lockheart, who treated plaintiff and said that she would be absent from work at least two or more days (and averaging five) a month. Plaintiff says that the administrative law judge did not build a logical bridge from the evidence before him to his decision to discount Dr. Francis's opinion and that he relied on irrelevant or impermissible reasons to discount Dr. Lockheart's opinion. In addition, plaintiff contends that the administrative law judge had no good reason on which to base his finding that plaintiff was not entirely credible; it was not enough to rely on her simple daily activities, low-paying work record and receipt of unemployment benefits for this finding.

A. Dr. Francis's Opinion

Although nonexamining opinions generally are not afforded the same weight as treating sources, in determining what weight to give them, administrative law judges still must consider whether these opinions are supported by the medical evidence, consistent with the record and offered by a specialist. 20 C.F.R. §§ 404.1527(c)(3)-(5), (e). In this case, the administrative law judge did not give much weight to Dr. Francis's opinion because he found it inconsistent with plaintiff's records. In this respect, the administrative law judge cited the opinion of Desiree Phillips, a physician's assistant who treated plaintiff and, after one appointment, told her to return for evaluation in eight weeks. He found this statement to be evidence that plaintiff's

limitations were not permanent.  Plaintiff takes issue with this finding, arguing that a request for reevaluation alone does not suggest the plaintiff's limitation is not permanent.  Defendant did not respond to this argument, for good reason.  Followup evaluation is a common practice even if the provider does not expect a problem to improve.  Further, because plaintiff's records state that at least some of her physical problems are degenerative, it is just as likely that a second appointment would reveal further deterioration.

The administrative law judge noted Phillips's opinion that plaintiff could lift 26-40 pounds and found this opinion more consistent with "light exertion" than with sedentary work.  AR 43, 485.  However, the administrative law judge did not develop the record on this point or explain his reasons for favoring this opinion over the opinions of other sources who believed that plaintiff was not capable of lifting this weight.  Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning.").  This information was listed as part of a form with a space for "weightlifting capabilities," but the record lacks any information about how those capabilities are tested or determined or how often or in what context plaintiff could lift that amount of weight, all of which are factors the administrative law judge should have considered.  Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) (administrative law judge correct to disregard treating physician's opinion when physician simply wrote "yes" in reply to pre-typed question without providing basis or context).  Accordingly, I cannot conclude that the administrative law judge's decision to discount Dr. Francis's opinion was supported by the evidence.

## B. Dr. Lockheart's Opinion

Dr. Lockheart's opinion was that the combination of plaintiff's back, neck and right extremity pain and major depressive disorder would prevent her from working full-time, from lifting more than 10 to 20 pounds and cause her to be absent from work approximately five times a month.  Under the Social Security regulations, the opinions of treating physicians must receive controlling weight, unless their opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or are "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

The administrative law judge said he did not "fully accept" Dr. Lockheart's opinion because (1) Dr. Lockheart relied on plaintiff's depression in reaching his conclusions, which was "inconsistent with the subsequent evaluation and notes of behavioral health"; and (2) he relied too heavily on plaintiff's subjective complaints of pain and disregarded the record, which showed that plaintiff experienced mild to moderate pain.  AR 43.  The administrative law judge found that the records of plaintiff's depression were inconsistent with Dr. Lockheart's opinion because plaintiff did not pursue further treatment, was not told to seek out regular treatment by any of her providers and had symptoms that were only moderate, even before she received treatment. Although it is not clear that plaintiff's moderate psychological symptoms would have been enough on their own to prevent her from working, the administrative law judge did not consider that Dr. Lockheart's opinion was based on the combined effects of plaintiff's depression and physical problems.  Martinez v. Astrue, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling.").  Moreover, the administrative law judge did not consider

the reason plaintiff said she could no longer seek regular treatment for her psychological problems: she had four sessions and told the administrative law judge that she did not go back because she lacked insurance. AR 119. "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain . . . failure to seek medical treatment." SSR 96-7P; Moss v. Astrue, 555 F.3d 556, 562 (7th Cir. 2009) (same). The administrative law judge's failure to consider plaintiff's financial position was not harmless error in this instance.

The administrative law judge further said he discounted Dr. Lockheart's opinion because Lockheart and other providers described plaintiff's pain as mild or moderate at other times during the course of treating plaintiff. In her brief, defendant points to evidence in the record that supports a conclusion that plaintiff's impairments were less severe than her complaints, for example, that "several doctors found that Plaintiff had normal sensation and reflexes, a normal or only mildly decreased range of motion in her neck and shoulders, and minimal tenderness in her neck (Tr. 40, 257, 268, 271, 274, 281, 287, 296, 299-300, 309, 312, 324-25, 390, 393, 396, 405, 414, 425, 429, 445)." First, I note that the administrative law judge did not cite all of these records in his opinion. Kastner v. Astrue, 697 F.3d 642, 648 (7th Cir. 2012) ("[T]he Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

More important, many instances of mild presentation cited by the administrative law judge occurred before plaintiff's alleged onset date. Because some of plaintiff's physical problems have been described as degenerative, it would not be surprising for her problems to progress from

8

mild to moderate over the course of her treatment.  Roddy v. Astrue, 705 F.3d 631, 637 (7th Cir. 2013) ("The term 'degenerative' implies that Roddy suffers from a condition that will get worse over time, especially without proper treatment; it is not one that will remain stable or improve.").  Similarly, the administrative law judge noted that in January 2011, plaintiff's problems appeared to be "temporary" and exacerbated by her work, such as lifting 50 pounds. AR 40.  Dr. Lockheart also suggested that plaintiff might be able to return to full-time work. AR 40, 427.  Although Dr. Lockheart appears to have believed that plaintiff's physical symptoms were mild or moderate before her onset date of July 2011, his later opinions suggest that he believed plaintiff's condition had become more severe.  Especially because at least some of plaintiff's impairments are degenerative, this change in Dr. Lockheart's analysis does not warrant discounting his opinion.

The administrative law judge further relied on the fact that plaintiff did not pursue recommended referrals and treatments, including injections, neurology visits and physical therapy.  However, as discussed above, Social Security regulations require the administrative law judge to consider whether there are good reasons for plaintiff's decision to decline further treatment.  SSR 96-7P; Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

It is well documented in the record (e.g., AR 260-61, 295, 389-90), that plaintiff believed her insurance would not cover various recommended procedures, including physical therapy, and that she was concerned about medical expenses.  Although plaintiff continued to receive the

same covered treatments at various times it does not follow that her financial situation was not an impediment to the other treatments. Although it is not clear why plaintiff declined the injections, the administrative law judge did not question plaintiff on this issue or otherwise develop the record, as required. Minnick v. Colvin, 775 F.3d 929, 938 (7th Cir. 2015) ("The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning."). Similarly, although one of plaintiff's treatment providers "repeatedly advised" her to ask her workplace for accommodations or for an easier position, the administrative law judge did not develop the record to clarify why plaintiff did not pursue this option. Id. Furthermore, plaintiff did receive some accommodation from work: she no longer had to lift the heaviest objects. AR 41.

In finding that plaintiff's subjective complaints of pain were inaccurate, the administrative law judge placed weight on her working as an assembler of veterinary supplies after her alleged onset date, finding it evidence that her subjective complaints of pain were inaccurate. The flaw in this approach is that plaintiff's work after her alleged onset date was part-time. Gainful employment is full-time work. SSR 96-8p ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Defendant argues that the administrative law judge's consideration of this fact was reasonable because he ultimately concluded that plaintiff could not work as an assembler, but could perform work at an equal level (light), with appropriate restrictions. The fact that plaintiff continued to work after her alleged onset date on a part-time basis does not suggest that her subjective complaints of pain

10

were untrue. Roddy, 705 F.3d 638 ("The fact that Roddy pushed herself to work part-time and maintain some minimal level of financial stability, despite her pain, does not preclude her from establishing that she was disabled."); Shauger, 675 F.3d at 697 ("We have recognized that even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.").

Eventually, plaintiff tried to return to work full-time but quit after one month, citing her seven absences, which she said were the result of pain. Her effort to work as a full-time assembler and resulting failure are not evidence that she is capable of full-time light work or that her subjective complaints are false or exaggerated. Plaintiff may have believed herself more capable of working than she actually was, but that does not suggest that her complaints of pain are untrue.

Finally, even if any of these factors weighed against Dr. Lockheart's opinion, the administrative law judge was required to consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(5) in considering the weight to be given to his opinion: the length, nature and extent of the treatment relationship, the supportability of the opinion by medical evidence, the consistency of the opinion with the record as a whole and whether the medical source is a specialist. Scrogham v. Colvin, 765 F.3d 685, 697 (7th Cir. 2014). See also Ellsworth v. Colvin, No. 13-CV-31-JDP, 2014 WL 3907139, at *8 (W.D. Wis. Aug. 11, 2014) ("[T]he overall analysis is incomplete because the ALJ never matched these reasons against other factors that might entitle the assessment to higher weight."). In this case, the administrative law judge did not discuss the length, nature or extent of plaintiff's treatment relationship with Dr. Lockheart or his specializing in occupational medicine. On remand, all of these should be

11

considered in determining the weight assigned to Dr. Lockheart's opinion.

## C.  Plaintiff's Credibility

The administrative law judge found plaintiff's credibility "diminished" because she had a poor work record and her complaints of pain were inconsistent with her daily activities. Plaintiff contends that these are insufficient reasons to discredit her.

An administrative law judge's credibility determinations receive deference and are to be overturned only if the finding is "patently wrong." Craft v. Astrue, 539 F.3d 668, 678 (7th Cir. 2008).  Nevertheless, "[t]he finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." Id.  See also Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record.").  This is true even if the record is not supportive of the plaintiff's complaints of pain.  Burnam v. Colvin, 525 F. Appx. 461, 464-65 (7th Cir. 2013) ("[A]n ALJ must articulate specific reasons for discrediting testimony about pain even if the degree of pain is not corroborated by medical evidence in the record.").

In this case, the administrative law judge found plaintiff's "less than stellar" work record did not support a finding of credibility in her favor.  In particular, he focused on the fact that plaintiff had "inconsistent or low earnings in certain years" (he does not say which years).  AR 42.  First, I see no reason why plaintiff's low earnings make her less credible.  Second, the administrative law judge faults her on the one hand for inconsistent work and on the other hand for working at all after her onset date.  The administrative law judge should avoid this sort of

12

inconsistency on remand.  Further, to the extent plaintiff's work was inconsistent after her alleged onset date, that fact should not be held against her.  Garcia v. Colvin, 741 F.3d 758, 762 (7th Cir. 2013) (sporadic work history after alleged onset date was indicative of disability, not malingering).

The administrative law judge also found plaintiff's complaints of pain lacked credibility because she performed daily activities, including grocery shopping once a week, gardening, driving and doing light household chores.  AR 42.  The Court of Appeals for the Seventh Circuit has stated repeatedly that "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."  Roddy, 705 F.3d at 639.  As is the case with relatively simple daily activities like plaintiff's, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).  Plaintiff's limited daily activities do not suggest that she is able to work or that her reports of pain are untruthful.

Also on remand, the administrative law judge should revisit one more aspect of his credibility decision.  He wrote that "review of the claimant's earnings record suggests that she collected unemployment benefits during the [time she was laid off from work]."  AR 41.  The administrative law judge concluded that this collection of benefits is incompatible with a disability finding because "in order to receive unemployment benefits, an individual must certify that they are willing, able, and ready to work."  AR 41.  However, receipt of unemployment benefits alone does not preclude receipt of disability benefits.  Although an administrative law

judge may consider the pursuit of unemployment benefits in assessing a plaintiff's credibility, the court of appeals has warned that "attributing a lack of credibility to such action is a step that must be taken with significant care and circumspection.  All of the surrounding facts must be carefully considered."  Scrogham, 765 F.3d at 699.  In this case, the administrative law judge failed to take all the facts into consideration.


### D.  Vocational Expert's Testimony

Although plaintiff did not raise the issue of the vocational expert's testimony, recent case law from the court of appeals prompts me to alert the administrative law judge to this area of his decision.  In this case, the vocational expert testified that plaintiff could perform as a photocopy machine operator or office helper, both listed in the Dictionary of Occupational Titles and that there existed 66,500 jobs in the national economy and 1,400 jobs in Wisconsin for photocopy machine operators and 36,400 jobs in the national economy and 740 jobs in Wisconsin for office helpers.  As in Voigt v. Colvin, 781 F.3d 871, 879 (7th Cir. 2015), "the administrative law judge fully credited the vocational expert's testimony . . . . even though the testimony did not explain the source of the expert's estimate of the number of jobs that [plaintiff] could perform."  See also Browning v. Colvin, 766 F.3d 702, 709 (7th Cir. 2014) ("There is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles, and while there are unofficial estimates of jobs in some categories, the vocational experts do not in general, and the vocational expert in this case did not, indicate what those data sources are or vouch for their accuracy.  And many of them estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of

14

dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category . . . .").

In this case, the administrative law judge had no reason to place confidence in the numbers of available jobs reported by the vocational expert because the expert provided no source for his estimates.  The administrative law judge also failed to consider why it would be reasonable to believe that plaintiff, who has problems with repetitive upper body movements, would be well-suited to work as a photocopy machine operator, a job that would be likely to require a number of repeated arm movements.  <u>Voigt</u>, 781 F.3d at 879 (administrative law judge should consider plaintiff's suitability for job suggested by vocational expert).  Although it is not clear that these errors are reason for reversal, on remand, the administrative law judge should further develop the record and, if a hearing is held, question the vocational expert about the bases for his opinion regarding the number of jobs plaintiff could perform.

ORDER

IT IS ORDERED that plaintiff Sherrie Delong's motion for summary judgment, dkt. #18, is GRANTED.  The decision denying plaintiff benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g).  The clerk of court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 9th day of June, 2015.

BY THE COURT:
/s/
_____
BARBARA B. CRABB
District Judge

15